572 So.2d 247 (1990)
STATE of Louisiana
v.
Rory GATES.
No. 89 KA 2089.
Court of Appeal of Louisiana, First Circuit.
November 14, 1990.
*248 Bryan Bush, Dist. Atty. by Dan Grady, Asst. Dist. Atty., Baton Rouge, for plaintiff/appellee.
Office of Public Defender, Baton Rouge, for defendant/appellant.
Before LOTTINGER, SHORTESS and CARTER, JJ.
SHORTESS, Judge.
Rory Kevin Gates (defendant) was charged by bill of information with possession of contraband upon the grounds of a state correctional institution, LSA-R.S. 14:402. After entering a not guilty plea, defendant filed a motion to quash which the district court granted. The state appeals, urging in a single assignment of error that the district court's ruling is erroneous.

FACTS
Defendant was a resident of Community Transition Center (commonly referred to as C.T.C.) in Baton Rouge, a facility under contract with the Department of Public Safety and Corrections to house inmates prior to their release. He had resided at C.T.C. since December 5, 1988, pursuant to a work release program for inmates.
On March 10, 1989, Kim Seago, a probation and parole agent, received a telephone call from the program manager at C.T.C. requesting defendant's removal from its facility. In response, Seago went to C.T.C., entered defendant's room and advised defendant that he was being removed from C.T.C. Seago cuffed defendant and asked him which bed was his. Seago then picked up a pair of jeans from defendant's bed. Seago searched the jeans and found a plastic bag of suspected marijuana inside one of the front pockets. After Seago seized the suspected marijuana, defendant asked Seago if he was going to talk to Eddie Gaines (who was assigned to the other bed in the room). After Seago responded affirmatively, defendant stated there was no need to "bother" Gaines. The suspected contraband was turned over to the Baton Rouge City Police Department; subsequent crime laboratory analysis determined that it was marijuana.
Defendant filed a motion to quash which asserted that this charge was an offense not punishable under LSA-R.S. 14:402, because the facility in which defendant had been housed at the time of the alleged offense was a private facility (and not a state correctional institution).
At the hearing on the motion, the prosecutor stated that he had just received a certified copy of the contract between C.T.C. and the Department of Public Safety and Corrections. Without objection, a copy of the contract was introduced in evidence.[1] *249 No other evidence was introduced at the hearing; and, following argument the court took the matter under advisement and then granted defendant's motion to quash.
On appeal, the state argues that the terminology "state correctional institution" used in LSA-R.S. 14:402 is generic and should carry no connotation that the correctional facility itself must be owned and operated by the state to be deemed a "state institution." The state asserts that the contract under which C.T.C. is operated was executed to fill a state need, making C.T.C. an agent of the state for purposes of providing services which the state would otherwise have to provide in its own facilities. The state further asserts that a state penitentiary would be no less a state correctional institution were it located on leased lands, nor would the institution's guards be any less prison guards were they employees of a private security company under contract to the state for that purpose instead of state employees. Defendant argues that to say C.T.C. is a "state correctional institution" would result in the creation of a new crime which the legislature did not intend to create.
The statutory provisions for this charge are contained in LSA-R.S. 14:402. LSA-R.S. 14:402 B provides that "[n]o person shall possess contraband upon the grounds of any state correctional institution." [emphasis added]
LSA-R.S. 14:3 provides the rule of interpretation for articles of the Criminal Code, as follows:
The articles of this Code cannot be extended by analogy so as to create crimes not provided for herein; however, in order to promote justice and to effect the objects of the law, all of its provisions shall be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision.
Thus, the courts are not empowered to extend by analogy the terms of a criminal provision to cover conduct not included within the definition of a crime. State ex rel. Sullivan v. Maggio, 432 So.2d 854, 856 (La.1983). Any doubt as to the extent of coverage of a criminal statute must be decided in favor of the accused and against the state. See State v. Brown, 378 So.2d 916, 918 (La.1979).
Applying these precepts, we conclude that LSA-R.S. 14:402 B proscribes the possession of contraband only upon grounds of a public correctional institution of the state, i.e., one which the state itself owns or leases, and operates. A reading of LSA-R.S. 14:402 together with the definition of "state" in LSA-R.S. 14:2(10),[2] convinces us that the phrase "state correctional institution" as employed in LSA-R.S. 14:402 B (when given a genuine construction, according to the fair import of its words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision) refers solely to a public correctional institution owned or leased, and operated by the state. Hence, the possession of contraband on grounds of a (private) correctional facility such as that of C.T.C. (rather than a public correctional facility owned or leased, and operated by the state) is beyond the scope of the proscription in LSA-R.S. 14:402 B.[3]
*250 At the preliminary hearing conducted on July 27, 1989, the trial judge found that although he was not convinced of the applicability of LSA-R.S. 14:402, the evidence showed "probable cause to hold the accused over on the charge of possession of marijuana...." For this reason, we remand this case to give the state the opportunity to institute a new prosecution on the lesser offense of simple possession of marijuana. LSA-C.Cr.P. art. 576. Accordingly, we affirm the district court's ruling which granted defendant's motion to quash the bill of information charging him with a violation of LSA-R.S. 14:402 and remand the case for possible further proceedings.
AFFIRMED AND REMANDED.
NOTES
[1] An examination of the copy of the contract reveals that the contract was entered into pursuant to the provisions relative to community rehabilitation centers set forth in LSA-R.S. 15:1131-1136. By its express terms, the contract provides that the contractor shall accept inmates selected by the Department of Public Safety and Corrections for participation in the contractor's community service center; and the contract clearly states that the quality of housing provided at the contractor's premises "shall equal at least that provided the inmates were they housed in a Department facility."
[2] LSA-R.S. 14:2(10) provides as follows:

"State" means the state of Louisiana, or any parish, municipality, district, or other political subdivision thereof, or any agency, board, commission, department or institution of said state, parish, municipality, district or other political subdivision.
[3] Webster's Third New International Dictionary (1968) defines "correctional" as "of or relating to correction," "dealing with or charged with the administration of corrections," and "concerned with or providing corrections." We have no difficulty concluding that a community rehabilitation center qualifies as a correctional facility.